UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                     Plaintiff,                 CR. NO.  87-80933

      v.

                                        HON. SEAN F. COX

LARRY CHAMBERS,

                    Defendant.

_____/

## MOTION TO REDUCE SENTENCE

Larry Chambers has been in custody since 1987. He has served 37 years. While this Court last reviewed Chambers' sentence in April 2021, two important things have changed since then. **First**, Chambers now has Lewy body dementia so advanced that he rarely utters words and is unable to use the bathroom, eat, bathe, or move around by himself. Most days, it appears Chambers does not understand where he is or why he is there. And "there" is the BOP's dedicated dementia unit, where the neediest two dozen male prisoners are held.[1] Without any action by this Court, Chambers will die there. In all, Chambers's medical conditions present extraordinary and compelling

---

[1] *See* Katie Engelhart, N.Y. TIMES, *I've Reported on Dementia for Years, and One Image of a Prisoner Keeps Haunting Me* ("Timothy Doherty, a senior officer specialist at F.M.C. Devens, which houses federal prisoners who require medical care, estimates that 90 percent of the men he oversees "don't know what they did. Some of them don't even know where they are."), available at https://www.nytimes.com/2023/08/11/opinion/dementia-prisons.html#

circumstances warranting release. **Second**, the Sixth Circuit has ruled that a non-covered CCE offense grouped with covered sentences may be eligible for a reduction under § 404. *United States v. Smith,* Nos. 20-1833 / 21-1218 (6th Cir. Jan. 13, 2022) (order). The last time this Court had the opportunity to address Chambers' life sentence, the law was unclear on this question.

This Court has already undertaken analysis of the § 3553(a) factors, and concluded a 405-month sentence was appropriate. (R. 1649, Opinion, 1853–54.) Chambers asks for a reduction of his remaining life sentence count under 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13 so that he may live his final days among family with some modicum of dignity.

The government does not concur. L.R. 7.1.

<div style="margin-left: 40%;">

Respectfully submitted,

*s/Benton C. Martin & Amanda N. Bashi*
Counsel for Larry Chambers
613 Abbott St., Ste. 500
Detroit, Michigan 48226
Email: Benton_Martin@fd.org
Phone: (313) 967-5542

</div>

Date: November 20, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                      Plaintiff,                CR. NO.  87-80933

      v.

                                          HON. SEAN F. COX

LARRY CHAMBERS,

                      Defendant.

_____/

## BRIEF IN SUPPORT OF A SENTENCE REDUCTION

## BACKGROUND

### Procedural History

Chambers was born in 1950s Arkansas, in one of the nation's poorest counties, and raised in the midst of the injustices of Jim Crow. William M. Alder, LAND OF OPPORTUNITY 196 (1995).[2] His parents were sharecroppers with 14 children. PSR ¶ 76. Chambers and his siblings had no running water, and the boys slept four to a bed. Alder, *supra*, 11–13. To make ends meet, the siblings picked and chopped cotton, with the older kids dragging younger ones on cotton sacks down the rows. *Id.* at 13. Sometimes, when the family ran out of food, Chambers recalls being sent down the road to beg for scraps from a white neighbor's house. *Id.*

---

[2] Larry Chambers's family was the subject of a meticulously researched book published by the University of Michigan Press, entitled LAND OF OPPORTUNITY: ONE FAMILY'S QUEST FOR THE AMERICAN DREAM IN THE AGE OF CRACK.

In 1967, at age 17, Chambers left home to enter Job Corps, which placed him in Casper, Wyoming. He found himself unable to adjust to the lifestyle outside the Arkansas delta, was kicked out of Jobs Corps for fighting. He returned home, dejected and out of opportunities. In the meantime, Chambers's younger brother Billy Joe had moved to Detroit to join their older brother Willie. Billy Joe started running a party store, which sold marijuana under the table. Years later, in the mid-1980s, Billy Joe branched out to a new drug gaining widespread popularity: crack cocaine.

Eventually, Chambers joined his brothers in Detroit and the cocaine business. In the late 1980s, federal authorities prosecuted the Chambers brothers and courts imposed lengthy prison sentences. Billy Joe received an approximately 27-year sentence (after an appeal and remand for resentencing). *United States v. Chambers*, 16 F.3d 1221 (Table), 1994 WL 12649, at *1 (6th Cir. 1994). Otis Chambers received 27 years; Willie Chambers, 21 years; co-conspirators Jerry Gant, William Jackson, and Marshall Glenn, 30 years; and Belinda Lumpkin, Larry's girlfriend, 25 years. *See United States v. Chambers*, 944 F.2d 1253, 1271 (6th Cir. 1991).

Larry Chambers received the harshest sentence: Three concurrent terms of life imprisonment—one for engaging in a continuing criminal enterprise (CCE), one for possession with intent to distribute more than 50 grams of crack cocaine, and one for engaging in a drug-trafficking conspiracy. *Chambers*, 16 F.3d 1221 (Table), 1994 WL 12649, at *1. On direct appeal, the Sixth Circuit vacated the simultaneous conspiracy

and CCE convictions because they violated double jeopardy, and on remand, the district

judge reimposed two concurrent life terms.

After enactment of the First Step Act of 2018, Chambers filed two motions, both

under provisions enacted as part of the Act. In May 2019, Chambers sought a

sentencing reduction under § 404 of the First Step Act, which allows reductions in

sentence for defendants convicted of certain crack-cocaine offenses. (R. 1614, 404 Mot.,

1434–40.)[3] In April 2020, Chambers also moved for a sentence reduction under 18

U.S.C. § 3582(c)(1)(A). (R. 1615, 3482 Mot., 1448–53.) The government agreed that

Chambers's age and kidney disease may qualify him for a sentence reduction under

§ 3582(c)(1)(A), but argued that the sentencing factors under § 3553(a) did not support

release. (R. 1637, 3582 Resp., 1677.)

On February 23, 2021, this Court denied the § 404 motion in part and granted it

in part. (R. 1642, Op., Feb. 23, 2021, 1834.) The Court left one life sentence in place

for Continuing Criminal Enterprise (Count 15) and set a future hearing on whether to

reduce a second life sentence on a conviction for distribution of crack cocaine (Count

6). (*Id.*) In the same order denying a reduction on the CCE count, the district court

denied the § 3582(c) motion. (*Id.*)

As to compassionate release, district court found that Chambers's age and health,

in light of the pandemic, constituted "extraordinary and compelling circumstances." (R.

---

[3] All record citations are to the PageID number unless otherwise noted.

1642, Op., 1831.) But in analyzing the § 3553(a) factors, the court cited the severity of the offense, Chambers's criminal history, his recent disciplinary history in prison, his lack of verifiable employment, and his "medium risk" recidivism assessment by the Bureau of Prisons. (*Id.* at 1832.)

Then, in April 2021, this Court granted a reduction on Count 6, stating that "[u]pon examining Chambers's guidelines range, having undertaken a renewed consideration of the § 3553(a) factors, and in light of Chambers's post-sentencing conduct, this Court concludes an upward variance is not warranted." (R. 1649, Op., 1853–54.) Despite the seriousness of the offense and Chambers's criminal history, the Court noted Chambers's age, his lengthy time already served in custody, and his educational achievements in custody. (*Id.* at 1854.) Moreover, despite the recent discipline in prison, "Chambers has had significant periods of time during which he has remained discipline-free, including a fifteen-year period without any discipline." (*Id.*) The court decided a 405-month sentence was "sufficient, but not greater than necessary, to comply with the purposes set forth in the sentencing statute" given "Chambers's efforts at rehabilitation." (*Id.*)

Chambers appealed, and during the pendency of the appeal, the government changed its approach to § 404 motions, agreeing that an aggregate sentence on covered and noncovered offenses may be reduced under § 404 of the First Step Act. The Sixth Circuit followed suit, and agreed that a non-covered CCE offense grouped with covered

sentences may be eligible for a reduction under § 404. *United States v. Smith,* Nos. 20-1833 / 21-1218 (6th Cir. Jan. 13, 2022) (order).

In affirming the district court's orders, the Sixth Circuit majority concluded that it need not decide whether Chambers was eligible for a reduction under § 404 because of this Court's analysis under § 3553(a). *United States v. Chambers*, No. 21-1331, 2022 WL 612805, at *2 (6th Cir. Mar. 2, 2022). A dissent argued that the "district court never provided any explanation for the disparate application of the § 3553(a) factors." APP 016. *Id.* at *7 (Clay, J., dissenting). The dissent reasoned: "[t]here remains a distinct possibility that if the district court had properly considered the § 3553(a) factors in relation to the relief Chambers actually sought in his motion for resentencing (i.e., simply a shorter sentence), the court would have found his CCE conviction warranted a sentence of imprisonment less than life." *Id.* at *8.

Today, Mr. Chambers asks this Court to undertake that consideration, and in light of his advanced dementia, reduce his sentence.

### Mr. Chambers' Medical Conditions

Chambers is 73 years old and suffers numerous ailments, now including cognitive decline in the form of Lewy body dementia, extrapyramidal and movement disorder, dysphagia, hypermetropia, and prediabetes. Ex. 1, Health Records at 22. He requires full care and assistance from hospital staff for all activities of daily living (ADLs) and instrumental activities of daily living (IADLs) due to his illnesses. *Id.* at 43. Chambers's

family is right to be concerned about his inability to function without the help of medical staff on a 24-hour basis.

> Instrumental activities of daily living (IADL) are those activities that allow an individual to live independently in a community. . . . The major domains of IADLs include cooking, cleaning, transportation, laundry, and managing finances. Occupational therapists commonly assess IADLs in the setting of rehab to determine the level of an individual's need for assistance and cognitive function. The major domains of ADLs are feeding, dressing, bathing, and walking. In contrast with IADLs, ADLs are necessary for basic functional living. Deficits in performing ADLs may indicate the need for home healthcare or placement in a skilled nursing facility.[4]

National Institutes of Health (NIH), National Library of Medicine, *Instrumental Activity of Daily Living* (November 14, 2022), https://perma.cc/YGV6-7YFS.

Mr. Chambers's most pressing condition is his Lewy body dementia, which the Bureau of Prisons currently has diagnosed as "possible major neurocognitive disorder with Lewy Bodies." Ex.1, Health Records at 14. Medical staff wrote in their administrative note that "Chambers remains on PA unit as he requires full care and assistance for all ADLS d/t Lewy body dementia." *Id.* at 18. There are numerous instances in Chambers's BOP medical records where medical staff indicate his Lewy body dementia diagnosis. *Id.* at 55, 87, 122, 137. Multiple medical exam comments

---

[4] National Institutes of Health, National Library of Medicine, *Instrumental Activity of Daily Living* (November 14, 2022)[hereinafter NIH], https://perma.cc/YGV6-7YFS.

emphasize the severity of Chambers's condition by describing his dementia as end stage. *Id.* at 72-73, 204-05.

BOP records document Mr. Chambers's two-year history with various medications to treat his dementia. Chambers first started with Risperdal, an antipsychotic medication, on October 5, 2024. *Id.* at 304. He was prescribed Risperdal concurrently with Cogentin (benztropine), an anticholinergic, and Ativan (lorazepam), an antianxiety medication. *Id.* at 204. Chambers's medications as of June 3, 2024 included benztropine, lorazepam, and risperidone, another antipsychotic. *Id.* at 14. Chambers's antipsychotic prescriptions have come with a range of adverse effects. The BOP noted on June 30, 2023, that Chambers started a new psychotropic medication (Benztropine) that led to neuroleptic malignant syndrome requiring hospitalization.[5] *Id.* at 385. More specifically, for benztropine, the NIH notes that "[T]he drug can intensify the symptoms of dementia, so it should be contraindicated in dementia patients."[6]

Chambers's dementia has rendered him nearly unresponsive. BOP medical staff note that he "appears to recognize some people, however despite staff and companions multiple verbal and visual attempts to communicate, patient continues to respond minimally often mumbling quietly, speaking nonsensically, or nodding "yes" or "no." Ex.1, Health Records at 86. Another documented instance reads, "Chambers remains on PA unit as he requires full care and assistance for all ADLS d/t Lewy body dementia.

---

[5] NIH, *Neuroleptic Malignant Syndrome* (Apr. 24, 2023), https://perma.cc/P3JL-MYJ3.
[6] NIH, *Benztropine* (January 29, 2024), https://perma.cc/P8BA-HXTU.

… Interview limited as inmate did not respond verbally to questions but would smile when writer mentioned food." *Id.* at 18.

On several occasions, Chambers has required the assistance of a feeding tube due to his conditions. *Id.* at 86, 117, 202, 204. He regularly requires the use of a wheelchair. *Id.* at 16, 43. He has been struggling with incontinence since July 3, 2023. *Id.* at 377. He was noted in his assessment to be unsteady and urinating and defecating on the floor of his cell. *Id.* Additionally, Chambers struggles with consistent auditory and visual hallucinations. *Id.* at 10, 32, 80, 240, 385, 1120 ("Inmate seen squatting near toilet trying to pick up items that were not there.").

## ARGUMENT

**I.  Chambers has exhausted his administrative remedies with the Bureau of Prisons.**

Undersigned counsel assisted Chambers in submitting his request to the warden more than 30 days ago, and there is no barrier to the exhaustion requirement.

**II.  The newly-amended standard under USSG 1B1.13**

The Sentencing Commission recently amended U.S.S.G. § 1B1.13—the policy statement that applies to motion for reduction in sentence under 18 U.S.C. 3582(c)(1)(A). Most relevant to Chambers's motion for a reduction in sentence is the amendment to §1B1.13(b). It now provides, in relevant part:

> (b) Extraordinary and Compelling Reasons.—Extraordinary and compelling reasons exist under *any* **of the following circumstances** *or a combination* **thereof**:

> (1)    Medical Circumstances of the Defendant.—
>
> **(A) The defendant is suffering from a terminal illness** (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and *advanced dementia.*
>
> *(B) The defendant is—*
> > *(i) suffering from a serious physical or medical condition,*
> > *(ii) suffering from a serious functional or cognitive impairment, or*
> > *(iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.*
>
> *(2)    Age of the Defendant.— The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.*
>
> . . .
>
> *(5)*    Other reasons.—The defendant presents **any other circumstance or combination of circumstances** that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

U.S.S.G. §1B1.13(b) (emphasis added). Chambers satisfies several of these criteria and

is thus eligible for a reduction to her sentence.

### III.    Extraordinary and compelling reasons warranting release exist.

Chambers's Lewy body dementia alone warrants release. BOP staff have described his dementia as "end stage" multiple times. Ex.1, Health Records at 72-73, 204-05.   But Chambers also suffers from several other ailments including hypermetropia, , extrapyramidal movement and movement disorder, dysphagia, and prediabetes. Ex.1, Health Records at 517.

Chambers's health has declined rapidly in the last three years due to his advanced age paired with dementia. The Sentencing Commission has specifically listed advanced dementia as an example of a terminal illness that constitutes extraordinary and compelling reasons to reduce a defendant's sentence. *See* U.S.S.G. § 1B1.13(b)(1)(A). In addition to his recent Lewy body dementia diagnosis, Chambers presents three other extraordinary and compelling circumstances to reduce his sentence from life.

Chambers's thousands of pages of medical records illustrate his significant mental and physical degradation as his dementia worsens. Delois, Chambers's dedicated sister, noted a horrifying interaction with medical staff that emphasizes the severity of his condition and disregard for human life by the BOP.

> [I]n January when Larry had pneumonia the nurse called and asked me before she put the feeding tube in if we didn't want to be bothered with him just let him die because he was at the end of life and he didn't have much more longer to live just let him go and she called twice and asked me was I sure before she put the tube in I told yes put it in he might bounce back the councilor knows it she [treated] him as if he was a worthless nobody that broke my heart and see that been six months ago I didn't [k]now a nurse could call and ask such a question that's statement alone should count for something we love our brother

just like a family supposed to his parents is gone we are all he got forty years is a very long time thank you, Delois

(Ex. 2, Text message from Delois Chambers.)

The average life expectancy for individuals with Lewy body dementia is 5 to 7 years after being diagnosed.[7] Even if Chambers's diagnosis is relatively recent, his cognitive decline has been rapid. BOP medical staff believe Chambers's long-term health prognosis is not favorable, noting several times in the medical records: "Patient has poor rehab[ilitation] potential due to medical complications or contraindications to participating in PT/OT services." Ex.1, Health Records at 17, 43, 86.

## IV.   A sentence reduction to time served is appropriate because the goals of punishment have been achieved

At age 73, Larry Chambers is not the same man sentenced at age 37. His 37 years in custody have shed new light on the § 3553(a) analysis as it applies to him. Under *Pepper v. United States*, 562 U.S. 476, 490–93 (2011), the Court must consider post-offense developments under § 3553(a), which provide "the most up-to-date picture" of the defendant's history and characteristics and "sheds light on the likelihood that [the defendant] will engage in future criminal conduct." *Id.* at 492.

The goals of just punishment have been accomplished. Chambers has been in custody since 1987, more than 37 years—the equivalent of a 500-month sentence after

---

[7] MedlinePlus, *Dementia with Lewy bodies* (Nov. 24, 2021), https://perma.cc/6YRM-XXN7.

good time credit. He has served far longer than the statutory minimum penalty he would face if convicted today, and more than the the high end of his guidelines range, which probation calculates as 324 to 405 months. (*See* May 26, 2020 First Step Act-Section 404 Report, at 2.). To the extent this Court believes Chambers has additional work to do or debts to pay, this Court can fashion conditions of release to that end.

There is no question Chambers has been convicted of serious crimes. But throughout the country, district courts routinely impose non-life sentences for even for more arguably more serious offenses like murder: In 2019, the nationwide median sentence for murder was 20 years. The mean sentence was 21 years. *See* 2019 Annual Report and Sourcebook of Federal Sentencing Statistics, U.S.S.C., at 64, *available at* https://www.ussc.gov/research/sourcebook-2019. The average sentence in our district for murder was less than 14 years. 2019 Statistical Information Packet, E.D. Mich., U.S.S.C., at 11, *available at* https://www.ussc.gov/research/sourcebook-2019.

There is no need for Chambers to die in prison. In a different case, the defendant argued—and the government did not challenge—that extraordinary and compelling reasons were present to justify compassionate release due to a diagnosis of advanced dementia.[8] *United States v. Johnson*, No. 4:00-cr-40023, 2020 WL 1434367, at *3 (W.D.

---

[8] Chambers's age is also relevant to recidivism. The Sentencing Commission highlights the recidivism rates of older offenders, 21.3%, was less than half of that of offenders under the age of 50 (53.45%). USSC, Older Offenders in the Federal System, at 5, https://perma.cc/UAJ5-6KTN. "Within any given age bracket, individuals released after imprisonment for violent crimes recidivate at a lower rate than releasees who

Ark. Mar. 24, 2020). The court noted that a longer sentence, given the defendant's advanced dementia, would be greater than necessary to serve the purposes of punish under section 3553(a)(2). *Id.* at 4. In granting compassionate release, the court duly noted that "[D]efendant will not be a danger to the community if released. Given his advanced age, terminal illness, and deteriorating mental and physical health, the Court does not believe that Defendant is likely to recidivate or that he would otherwise pose a danger to the community." *Id.* at 5.

Chambers has spent half of his life in federal prison. In the end, today, he spends his days barely uttering a word, unable to recognize the people around him – let alone the reason he is there. His family does not want him to die in prison alone in a soiled bedpan. He asks this Court for the opportunity to die with some modicum of dignity and with his sister Delois at his side.

## CONCLUSION

This Court should reduce Chambers's sentence to time served. In the alternative, this Court should reduce the sentence to 405 months to give him the chance for release.

Respectfully submitted,

*s/Benton C. Martin & Amanda N. Bashi*
Counsel for Larry Chambers
613 Abbott St., Ste. 500
Detroit, Michigan 48226
Phone: (313) 967-5832

Date: November 20, 2024

---

served time for any other category of crime." J.J. Prescott, Benjamin Pyle, Sonja B. Starr, *Understanding Violent-Crime Recidivism*, 95 NOTRE DAME L. REV. 1643, 1688 (2020).

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

              Plaintiff,              CR. NO.  87-80933

    v.

                                    HON. SEAN F. COX

LARRY CHAMBERS,

              Defendant.

_____/

## CERTIFICATE OF SERVICE

I certify that I submitted the above documents through the CM/ECF docketing system, which will serve a copy on opposing counsel of record.

                                 /s/Amanda N. Bashi