UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Case No. 87-cr-80933

v.

Hon. Sean F. Cox

LARRY CHAMBERS,

        Defendant.
_____/

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
<u>MOTION TO REDUCE SENTENCE</u>**

Larry Chambers led the Chambers Brothers Organization, a violent cocaine trafficking operation with several hundred workers and 200 retail crack houses in metropolitan Detroit for much of the 1980s. The conspiracy's drug sales generated as much as $200,000 a day. The organization's enforcers—known as "the wrecking crew"—punished workers who got out of line and intimidated them to ensure compliance and loyalty. Chambers himself engaged in violence, forcing a man out of a third-story window and beating a man with a chair leg in front of others to demonstrate the consequences of failing to do their jobs. *See United States v. Chambers*, 944 F.2d 1253, 1256 (6th Cir. 1991); PSR, ¶¶ 12-16, 20; Gov. Sentencing Mem., ECF No. 892, PageID.1982-1992.

For his crimes, Chambers was sentenced to life, an upward departure that has been upheld and maintained by various reviewing judges, both district and appellate, for thirty years. Now 74 years old, he is suffering from dementia with behavioral disturbances and severe psychotic symptoms, including delusions, visual hallucinations, and assaultive behavior. He requires 24-hour care and, for his safety and the safety of others, needs to be in a locked facility.

Chambers is, as his briefing suggests, one of the neediest dementia patients in the BOP. And recent disciplinary history suggests he remains dangerous: between June 2021 and August 2022, he was charged three times for assault, three times for destroying property, and once for fighting—each time found not responsible for psychological reasons.

The Bureau of Prisons has been trying unsuccessfully for two years to find a suitable facility to which Chambers can be released. Chambers's sister proposes simply taking him to her home; indeed, she told one possibly suitable facility that she planned to sign him out and take him home as soon as he got there, resulting in their refusal to admit him. Having failed to convince the BOP to endorse this release plan, Chambers's counsel and sister now ask this Court to send him home to die. But the compassionate release statute isn't a means to execute end-of-life plans for incompetent inmates made by courts, lawyers, and family members. The Court should deny this motion.

## ARGUMENT

Chambers cannot be released because he has not established and cannot establish that he is not a danger to the safety of any other person or the community. *See* U.S.S.G. § 1B1.13(a)(2). Nor can he show that the § 3553 factors justify his requested reduction.

In Title 18, United States Code, Section 3582(c)(1)(A)(i), Congress enacted a narrow exception to the general rule that a federal court "may not modify a term of imprisonment once it has been imposed," permitting a court to reduce a term of imprisonment where it finds that "extraordinary and compelling reasons" warrant a reduction. Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons," 28 U.S.C. § 994(t), but the Commission's authority necessarily is limited by Congress's clear directive that any such reasons be both *extraordinary* and *compelling*.

The Commission's description of extraordinary and compelling reasons is found in § 1B1.13 of the Sentencing Guidelines. The government agrees that Chambers has established that such reasons exist, given his medical circumstances and age. *See* U.S.S.G. § 1B1.13(b)(1) and (2). Since his reasons are sufficient under those enumerated paragraphs, there's no need to assess whether he would also qualify under the catchall "Other Reasons." *See* U.S.S.G. § 1B1.13(b)(5). Nor

is it relevant whether his CCE sentence can be reduced under the First Step Act, an argument Chambers barely develops and is not entitled to relitigate.

A prisoner is not entitled to a reduction upon showing extraordinary and compelling reasons. Chambers must still show that he presents no danger to any person or the community, § 1B1.13(a)(2), and that the reduction is warranted by the § 3553 factors. *See* U.S.S.G. § 1B1.13(a). He hasn't; indeed, he makes no argument whatsoever as to dangerousness.

Chambers does not meaningfully contest the BOP's assessment that he needs to be locked down for his own safety and the safety of others. As noted above, his disciplinary record includes assault, fighting, and property damage. His medical records thoroughly document his severe psychotic symptoms, including delusions, hallucinations, and assaultive behavior. A nurse noted as recently as September 9 that he had "attempted to punch staff members multiple times" over the previous month. *See* Mot. to Reduce Sentence, ECF No. 1659, Ex. 1 (Health Records) at 6.

As to the § 3553 factors, it remains worth noting that the district judge with the best understanding of the Chambers Brothers organization varied upward to a life sentence for Chambers. Like all life sentences, that determination reflected a deliberate judgment that this defendant should die in prison. This Court made the

4

same judgment in denying Chambers's compassionate-release motion in February 2021. Opinion and Order, ECF No. 1642, PageID.1830-1832.

Chambers is of course correct that his current circumstances matter in an updated § 3553 analysis. But the most significant change in those circumstances since April 2021 (when the Court relied on history-and-characteristics facts like Chambers's completion of BOP programming and relative lack of disciplinary history) is the dramatic deterioration of his health and corresponding increase in disciplinary issues, safety risks, and needed medical care.

The § 3553 factors direct courts to consider "the need for the sentence imposed … to provide the defendant with needed … medical care." 18 U.S.C. § 3553(a)(2)(D). Chambers's brief does not explain how reducing his sentence will serve this goal, and it self-evidently will not. The BOP's medical opinion is that he cannot receive the care he needs at his sister's home. The motion simply asks that he be allowed to die with dignity.

This observation leads to an uncomfortable truth. Although the brief concludes with an emotional appeal purportedly from Chambers himself—"[h]e asks this Court for the opportunity to die with some modicum of dignity and with his sister Delois at his side"—there is no reason to believe he has personally expressed that wish to anyone and good reason to believe he hasn't, since he

5

essentially doesn't talk at all. This is, to say the least, a morally weighty decision to make on his behalf, and the Court should tread carefully.

If he could receive the same care outside of prison as in, his preference for release could be more safely assumed. If he could be released to a locked facility capable of caring for patients with his substantial needs—the solution the BOP is still trying to pursue—perhaps the risk to others and the community of releasing him would be insignificant. But his sister has consistently indicated that she wants to take him to her home, where he cannot receive that care. That forecloses release. Simply put: the compassionate release statute does not authorize courts and lawyers to remove needed medical care so an inmate can "die with dignity."

## CONCLUSION

For the foregoing reasons, Chambers's motion should be denied.

> Respectfully submitted,
>
> DAWN N. ISON
> United States Attorney
>
> s/ Benjamin C. Coats
> Assistant U.S. Attorney
> 211 W. Fort Street, Suite 2001
> Detroit, MI 48226
> (313) 226-9734
> benjamin.coats@usdoj.gov

Date:  December 9, 2024

## CERTIFICATE OF SERVICE

      I hereby certify that on December 9, 2024, I electronically filed this response with the Clerk of the United States District Court for the Eastern District of Michigan using the ECF system, which will send notification of such filing to Amanda N. Bashi and Benton C. Martin, attorneys for the defendant.

                                            s/Benjamin C. Coats
                                            Assistant United States Attorney
                                            211 W. Fort Street, Suite 2001
                                            Detroit, MI  48226
                                            Phone: (313) 226-9734
                                            E-Mail: benjamin.coats@usdoj.gov