UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                          CR. NO. 87-80933

v.

                                              HON. SEAN F. COX

LARRY CHAMBERS,

        Defendant.
_____/

**<u>REPLY IN REGARD TO MOTION TO REDUCE SENTENCE</u>**

The government does not contest that Larry Chambers's request for compassionate release is properly before this Court or that "extraordinary and compelling reasons" exist for a reduction in his sentence. (R. 1664, Resp., 3439.) Instead, the government opposes Chambers's request for release on two bases: dangerousness, and the sentencing factors. Neither reason is persuasive.

As evidence of dangerousness, the government points to disciplinary records from two and a half years ago, in 2021 and mid-2022. (R. 1664, Resp., 3438.) But as the government acknowledges, he was found not responsible for these incidents for psychological issues, and notably, these incidents occurred surrounding Chambers's transportation from FCI Terre Haute, where he was incarcerated for several years, to FMC Devens, where he is now. Before the transfer, as this Court previously noted, Chambers remained discipline-free for 15 years. (R. 1649, Order, 1854.)

1

More importantly, these incidents appear directly related to Chambers's dementia. These incidents are not a sign that Chambers is a danger to the general community if released, as contemplated under USSG § 1B1.13(a)(2). There is no serious argument that he is "an ongoing threat to public safety." *United States v. Campos*, No. 3:17-CR-142 (1), 2024 WL 4010142, at *3 (S.D. Ohio Aug. 30, 2024). The government's bigger concern appears to be that Chambers's medical needs will be too much for his sister to handle. But that is not the case.

Counsel has had extensive conversations with Delois Chambers, Larry's sister, about the severity of his condition and her ability to provide care. She is well aware of the responsibility. (Exhibit 1, Letter from Delois.) She visited Larry at FMC Devens and witnessed his current condition. But she is confident she can provide the necessary care.

Delois's confidence comes from experience. She cared for her mother, who suffered a similar deterioration in mental condition as Larry. Delois owns her home where Larry will reside. She explained to counsel how she worked with local benefit programs with her mother to get a daily nursing aide and plans to seek the same type of assistance with Larry. She will coordinate regular nursing and doctor care and is ready to take on the responsibility of coordinating the type of care Larry needs.

Not only will Delois have professional assistance in caring for Larry, she will also have the assistance of her niece and another of Larry's sisters that live nearby her home. In addition, Larry's family in Detroit, including his brother BJ and his son, Larry Davis,

2

have confirmed for counsel that they also will help support Delois as needed. For example, both men have committed to providing any financial support that Larry and Delois may need to make Larry's transition as smooth as possible.

Larry being in Delois's care is a far better solution not only for Larry but for the system as a whole. The government acknowledges that Larry is "one of the neediest dementia patients in the BOP." (R. 1664, Resp., 3438.) Delois is willing to care for Larry as family, with the professional support resources available in her community, without cost for the many hours that will be devoted to his care.

In contrast, Chambers's incarceration at FMC Devens drains government resources that are already too-limited for the task at hand of caring for the ill and aging population at the prison. The Inspector General issued a report on Devens this month that casts the facility in a poor light. *See* Department of Justice, Office of the Inspector General, Inspection of the Federal Bureau of Prisons' Federal Medical Center Devens (Dec. 2024), https://perma.cc/VQ7C-V2G3. The Inspector General concludes that staff shortages at FMC Devens "have created widespread and troubling operational challenges at FMC Devens that substantially affect the health, welfare, and safety of employees and inmates." *Id.* at i.

Among other concerning information, the Inspector General reported that, during its visit, "the medical institution had only 1 physician and the Clinical Director (who is also a physician) to manage the care of the entire inmate population of approximately 941 inmates." *Id.* at i. Overall, "the staffing crisis at FMC Devens has

3

cascading effects on its ability to care for its inmates and limits the quality and quantity of medical services it can provide, including for inmates who were transferred there expressly for its specific medical programs." *Id.* In addition, the Inspector General observed "potentially dangerous medication distribution, lack of preventive healthcare screening, inappropriate placement of inmates in the Memory Disorder Unit (MDU), and inconsistent processes for requesting and accessing care." *Id.*

There were also "inconsistencies regarding inmates' access to medical care and routine screening of inmates over age 50 for preventive healthcare and cognitive impairment, including an apparent inconsistency in how FMC Devens nursing employees determined what constituted a need for sick call and how that need was tracked." *Id.* at ii. "This inconsistency may limit an inmate's ability to be seen and receive medication in a timely manner, which could negatively affect their overall health." *Id.*

As to the sentencing factors overall, if sentenced today, with the shift in view about crack conspiracies, it is unlikely Chambers would have received a life sentence, or even a sentence equivalent to the 37 years he has served. But this Court does not need to go that far to recognize that, in light of Chambers's greatly deteriorated state, whatever sentencing factors once warranted a life sentence have dissipated. As a reporter who visited the memory care unit at FMC Devens once reflected, the only sentencing rationale that remains for incarcerating a person like Chambers, who can not really reflect on his crimes, is general deterrence to others, but to justify continued incarceration at this stage requires a person to "hold the unlikely belief that a person's

4

decision to commit a crime would be affected by the knowledge that prisoners with advanced dementia are sometimes released from prison early." Katie Engelhart, *I've Reported on Dementia for Years, and One Image of a Prisoner Keeps Haunting Me*, New York Times, Aug. 11, 2023, https://www.nytimes.com/2023/08/11/opinion/dementia-prisons.html.

The government suggests that Chambers himself would not want to go to live with his sister. But Chambers has for years asked for release, and in conversations with counsel has never wavered in his desire to leave custody. His family stands ready to accept him into their care. This Court should permit Chambers's release.

## CONCLUSION

This Court should reduce Chambers's sentence to time served. In the alternative, this Court should reduce the sentence to 405 months to give him the chance for release.

        Respectfully submitted,

        *s/Benton C. Martin & Amanda N. Bashi*
        Counsel for Larry Chambers
        613 Abbott St., Ste. 500
        Detroit, Michigan 48226
        Phone: (313) 967-5832

Date: December 19, 2024

5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        CR. NO. 87-80933

v.

                            HON. SEAN F. COX

LARRY CHAMBERS,

        Defendant.
_____/

**CERTIFICATE OF SERVICE**

I certify that I submitted the above documents through the CM/ECF docketing system, which will serve a copy on opposing counsel of record.

                                          /s/Benton C. Martin